UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:25-CV-66-JHM

RICHARD D. HUDSON                                                    PLAINTIFF

v.

JASON WOOSLEY, *et al.*                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Hudson filed the instant *pro se* prisoner 42 U.S.C. § 1983 action.  The amended complaint (DN 11)[1] is now before the Court for initial screening pursuant to 28 U.S.C. § 1915A.  For the reasons stated below, the Court will dismiss some claims and allow other claims to proceed.

## I.  SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff was a pretrial detainee at Grayson County Detention Center (GCDC) at the time pertinent to the complaint.  He sues GCDC Jailer Jason Woosley; Captains Bobby Odom, Adam Hutch, and Tony Watch; and Gary Skaggs, the GCDC Medical Director, in their individual and official capacities.  He also sues Grayson County and the City of Leitchfield.

Plaintiff states that he is 72 years old and that he suffers from "a plethora of medical maladies that include extreme high blood pressure, heart disease, Type Two diabetes, and has previously undergone approximately eighteen (18) orthopedic surgical procedures to repair various fractures throughout his body."  He also asserts that he has a back injury which requires him to use a wheelchair.  He maintains that he was assigned to a medical unit at GCDC due to his

---

[1] Plaintiff initially filed an action along with eleven other inmates.  The Court severed that action, directed the Clerk of Court to open new civil actions for each Plaintiff, and directed each Plaintiff to file a superseding amended complaint alleging how his constitutional rights were violated and naming those Defendants he alleges are responsible (DN 3).

conditions.  He states that when he arrived in the medical unit "he discovered the unit contained five (5) metal bunk beds (without ladders) and said medical unit was absurdly 'overcrowded.'" He states that it was designed to house ten inmates but held sixteen inmates "with the majority sleeping and living on three (3) inch by eighty-four (84) inch green plastic mats on the hard, cold concrete floor."  He asserts that he "found a empty place in the corner and with the assistance of another inmate placed his mat and property in the available corner spot."

Plaintiff reports that on any given day the medical unit "would be packed wall-to-wall with anywhere from twelve (12) inmates to as many as nineteen (19)."  He states that the medical unit contained "amputees, elderly, infirm and orthopedically challenged and impeded inmates unable to climb into 'top' bunk beds, the bottom five (5) bunk beds were typically slept in, thus, leaving only floor space for these remaining inmates, including Plaintiff Hudson."  Plaintiff reports that he slept in the conditions for six months.  He states that if he had not had the assistance of other inmates he "could not even get up and down from the wheel chair to the plastic mat on the floor." He asserts that as a result "his body suffered extreme pain and suffering in his surgically repaired neck (C-5-6-7), his left femur which has a twelve (12) inch plate, seven (7) screws, a pin and a nail, muscle spasms, lack of sleep, painful headaches and overall stiffness."  He states that he exhausted his administrative remedies as to this claim.

Plaintiff further states that Defendants "failed to ensure the combined space utilized for the sink, toilet and shower area were equipped with safety bars, handrails and non-skid shower floor mats in order to prevent unnecessary slipping, falling and injury to Plaintiff Hudson . . . in the medically designated unit."  He continues, "Obviously, this failure has resulted in an extremely hazardous area of the unit for Plaintiff Hudson.  When attempting to go from his wheelchair to use the toilet, brush his teeth or take a shower puts Plaintiff in a precarious predicament."  He maintains

2

that this violates the Americans with Disabilities Act (ADA) and shows deliberate indifference in violation of the Eighth Amendment.

Plaintiff next alleges that the medical unit "does not contain a 'panic or emergency call button.'"  He states that there have been a number of instances in which there have been medical emergencies where it took approximately fifteen to twenty minutes for GCDC medical staff to arrive.

Plaintiff next states, "Whether GCDC staff have failed to provide one (1) hour of recreation outside the unit have violated Plaintiff Hudson's constitutional rights.  There has <u>NEVER</u> been a recreation schedule posted in Unit #296 and there has <u>NEVER</u> been a regular time for 'outside' recreation."

Plaintiff next asserts that the ventilation system at GCDC is "out-of-date, antiquated, in disrepair, and needs to be immediately replaced by GCDC."  He states that "the HVAC system in place will have certain sections of the detention center 'FREEZING' while other sections are 'BURNING UP!'"  He maintains that the freezing temperatures in the medical unit caused him "to needlessly suffer extreme discomfort, pain and undue suffering when attempting to stay warm."

Plaintiff also states that he was "severely 'over medicated' by GCDC physician Dr. Roy Washington, MD when prescribing a plethora of high blood pressure medications (diuretics)" which he discovered after he was transferred to another facility.  He states that at one point he was taking five to seven blood pressure medications, which he states caused side effects of "fatigue, nausea, loss of appetite, upset stomach, and general uneasiness."  He asserts that that it was the "professional responsibility" of Defendant Skaggs "to monitor the treatment rendered by Dr. Washington to Plaintiff Hudson and realize the inordinate amount of high blood pressure medication(s) prescribed" to him and that this could have caused irreversible kidney damage.

3

Plaintiff next asserts, "The GCDC staff indiscriminately sold E-type cigarettes to Plaintiff Hudson without first obtaining authorization and permission from the Food & Drug Administration."

Plaintiff further states that the medical unit is not equipped with a camera that would enable staff to maintain contact with the inmates twenty-four hours a day, seven days a week. Plaintiff points to his medical conditions and asserts that they put him at risk of a heart attack or stroke and that cameras "could monitor each and every movement of Plaintiff Hudson and every other inmate as well."

Finally, Plaintiff asserts that the medical unit "is not equipped with a functioning and operable 'sprinkler system'" which is a fire hazard.

As relief, Plaintiff seeks compensatory and punitive damages and injunctive relief.

## II.  STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers,*

4

*USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III.  ANALYSIS

#### A.  *Individual-capacity claims*

##### 1.  *Woosley, Odom, Hutch, or Watch*

Plaintiff sues Woosley, Odom, Hutch, and Watch, but the complaint contains no allegations against these Defendants.  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  Where a person is named as a defendant without an allegation of specific conduct, the claim against the defendant is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of plaintiff's claims for failure to state a claim upon which relief may be granted where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *George v. Gordon*, No. 2:22-CV-1981, 2022 U.S. Dist. LEXIS 101205, at *8 (S.D. Ohio

June 6, 2022) ("[T]he Court cannot draw the reasonable inference that any of these Defendants are liable for the misconduct alleged, because Plaintiff makes no factual assertions about any Defendant's conduct . . . . Even affording Plaintiff the leniency due to *pro se* complainants, the Court can do no more than guess at the nature of the claim asserted.") (citations omitted), *report and recommendation adopted*, No. 2:22-CV-1981, 2022 U.S. Dist. LEXIS 120459 (S.D. Ohio July 6, 2022).

Moreover, to the extent that Plaintiff is suing any of these Defendants based on their roles as supervisors of other personnel, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).

Because Plaintiff alleges no personal involvement in the alleged acts by Woosley, Odom, Hutch, or Watch, Plaintiff's individual-capacity claims against them must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Skaggs

Plaintiff does make a specific allegation against Skaggs. He asserts that he was overmedicated by a non-Defendant doctor and that Skaggs failed "to monitor the treatment rendered" by the doctor. As stated above, the doctrine of *respondeat superior* does not apply in § 1983 actions. Thus, there is no *respondeat superior* liability where the plaintiff alleges only that the defendant merely failed to act or control employees. *Shorts v. Bartholomew*, 255 F. App'x 46, 53 (6th Cir. 2007); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). Accordingly,

Plaintiff's individual-capacity claim against Skaggs will be dismissed for failure to state a claim.

### B.  City of Leitchfield

Plaintiff makes no allegations against the City of Leitchfield.  The Court takes judicial notice that GCDC is operated by Grayson County and not the City of Leitchfield.  Therefore, Plaintiff's claim against the City of Leitchfield will be dismissed for failure to state a claim.

### C.  Grayson County and official-capacity claims

Plaintiff sues each individually-named Defendant in his official capacity.  Official capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Thus, Plaintiff's official-capacity claims against Woosley, Odom, Hutch, Watch, and Skaggs are actually brought against their employer, Grayson County.  The Court will dismiss the official-capacity claims against these Defendants as redundant to Plaintiff's claims against Grayson County.  *See, e.g., O'Connor v. Chatfield*, No. 2:19-cv-218, 2021 U.S. Dist. LEXIS 230522, at *11 (W.D. Mich. Mar. 29, 2021) (dismissing official-capacity claims against county official because redundant to claims against the county) (citing *Kentucky v. Graham*, 473 U.S. at 167 n.14).

#### 1.  Conditions of confinement

Plaintiff alleges violations of the Eighth and Fourteenth Amendments.  The Eighth Amendment applies to a convicted inmate, not a pretrial detainee.  *See Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) ("[T]he Eighth Amendment applies only to those convicted of crimes. . . . [P]retrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment.") (internal citations and quotation omitted).  Because Plaintiff was a

pretrial detainee at the time of the alleged events, the Eighth Amendment claims will be dismissed for failure to state a claim upon which relief may be granted.

The standard for a conditions-of-confinement claim under the Fourteenth Amendment has two prongs. To satisfy the first, or objective prong, a plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Contemporary standards of decency determine whether conditions of confinement meet this standard. *See, e.g.*, *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1, 9, (1992)). To satisfy the second prong under the Fourteenth Amendment, a plaintiff must show that defendants acted "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 836). Stated another way, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id*. at 596–97 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

### a. Overcrowding

Upon review, the Court will allow Plaintiff's Fourteenth Amendment claim related to overcrowding to proceed against Grayson County based on his allegations that he was forced to sleep on a mat on the floor for six months despite being in a wheelchair causing him injury.

### b. Panic button

The Court next turns to Plaintiff's allegation that there was not a "'panic or emergency call button'" in his cell. "[P]risoners have no freestanding constitutional right to an emergency call

button in their cell." *Morris v. Jail*, No. 4:23-CV-0280-WMR-WEJ, 2024 U.S. Dist. LEXIS 71050, at *5 (N.D. Ga. Apr. 18, 2024); *see also Parsons v. Wilkinson,* 168 F.3d 490 (6th Cir. 1998) (unpublished table decision) (finding the plaintiff failed to demonstrate that the absence of an emergency call button in his cell subjected him to a serious deprivation of life's necessities); *Smith v. Holder*, No. 1:17-cv-0117 SRC, 2020 U.S. Dist. LEXIS 183, at *29 (E.D. Mo. Jan. 2, 2020) ("Courts that have addressed the absence of call buttons in cells have uniformly found that it does not constitute a violation of the Eighth or Fourteenth Amendments."); *Garner v. City of Philadelphia*, No. 11-cv-5960, 2013 U.S. Dist. LEXIS 116062, at *16 (E.D. Pa. Aug. 16, 2013) ("Although panic buttons may offer inmates additional safety and protection, we cannot find that active panic buttons constitute a 'minimal civilized measure of life's necessities[.]'"). Therefore, this claim will be dismissed for failure to state a claim upon which relief may be granted.

### c. *Recreation*

In regard to recreation, Plaintiff states, "Whether GCDC staff have failed to provide one (1) hour of recreation outside the unit have violated Plaintiff Hudson's constitutional rights. There has <u>NEVER</u> been a recreation scheduled posted in Unit #296 and there has <u>NEVER</u> been a regular time for 'outside' recreation." The Sixth Circuit has recognized that prisoners are entitled to outdoor recreation sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). However, "no applicable precedent require[es] any minimum amount of outdoor recreation for prisoners." *Kizer v. Robertson Cnty.*, No. 3:17-cv-00715, 2018 U.S. Dist. LEXIS 79214, at *3 (M.D. Tenn. May 10, 2018) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). The Sixth Circuit has held only that "a total or near total deprivation of exercise or recreational opportunity, without penological justification" violates the objective standard for stating an Eighth Amendment or Fourteenth Amendment conditions-of-

confinement claim. *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). The Court finds that Plaintiff's allegations regarding recreation are too vague to support a total or near-total denial of recreation. *See Stetson v. Kalamazoo Cnty. Jail*, No. 1:25-cv-1116, 2025 U.S. Dist. LEXIS 215483, at *9 (W.D. Mich. Oct. 31, 2025) (dismissing recreation claim by pretrial detainee on initial review finding that the plaintiff "[did] not provide the Court with facts that show a total or near total deprivation of recreational opportunities"); *Smith v. Hardin Cnty., Tenn.*, No. 20-1072-JDT-cgc, 2021 U.S. Dist. LEXIS 22961, at *19 (W.D. Tenn. Feb. 8, 2021) ("[Plaintiff] offers no facts regarding the duration of the alleged deprivation of recreation. Thus, he has not sufficiently alleged a total or near-total deprivation."). Therefore, Plaintiff's claim based on lack of recreation must be dismissed for failure to state a claim.

### d. Temperature

Turning to Plaintiff's allegations about the temperature of the medical unit, the Constitution does not mandate comfortable prisons. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[C]onstitutionally adequate housing is not denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation endangers an inmate's health." *Grubbs v. Bradley*, 552 F. Supp. 1052, 1122-23 (M.D. Tenn. 1982). Plaintiff states that he experienced "freezing" temperatures in the medical unit, but he presents no basis for his assertion regarding the cell's temperature other than his estimation, which is not sufficient, and does not state the duration of the cold temperature. *See, e.g.*, *Payette v. Trierweiler*, No. 2:10-CV-8, 2010 U.S. Dist. LEXIS 105821, at *18 (W.D. Mich. Oct. 4, 2010) (dismissing claim on initial review where plaintiff had no basis, other than the fact that he felt cold, for claim that "it felt as if his cell was being kept between '55 and 64 degrees' from September to December"). Plaintiff's vague and conclusory

statement about the temperature does not rise to the level of an "[e]xtreme deprivations" to meet the objective standard. *Hudson v. McMillian*, 503 U.S. at 9; *see, e.g.*, *Dean v. Campbell*, No. 97-5955, 1998 U.S. App. LEXIS 17782, 1998 WL 466137 at *2 (6th Cir. July 30, 1998) (confinement in a cold segregation cell for more than twenty days not sufficient to show "the types of extreme deprivation" necessary to meet the objective component of a conditions of confinement claim). Moreover, Plaintiff does not specify any physical injury because of the temperature other than discomfort. *See Watson v. Curley*, No. 2:12-cv-259, 2012 U.S. Dist. LEXIS 170814, at *12 (W.D. Mich. Dec. 3, 2012) (dismissing claim on initial review where plaintiff had failed to allege physical injury in claim regarding cold temperature in prison). Therefore, Plaintiff's claim about the cold temperature of the medical unit will be dismissed for failure to state a claim.

### e. E-cigarettes

Plaintiff also asserts, "The GCDC staff indiscriminately sold E-type cigarettes to Plaintiff Hudson without first obtaining authorization and permission from the Food & Drug Administration." The Court discerns no constitutional claim based on this allegation, and the claim will be dismissed for failure to state a claim.

### f. Cameras

Plaintiff also alleges that the medical unit is not equipped with cameras that enable the staff to monitor inmates twenty-four hours a day, seven days a week. The Court finds that the lack of cameras is not an extreme deprivation nor does it pose a substantial risk of serious harm to meet the objective standard for stating a conditions of confinement claim. *See Little v. Sullivan*, No. 19-cv-00588-NJR, 2019 U.S. Dist. LEXIS 100159, at *3 (S.D. Ill, June 14, 2019) (dismissing claim based on lack of cameras and panic buttons on initial review finding that the plaintiff had not alleged a substantial risk of harm to his health or safety); *Deas v. Ingham Cnty. Jail*, No. 1:18-cv-

838, 2018 U.S. Dist. LEXIS 136744, at *9-10 (W.D. Mich. Aug. 14, 2018) ("Plaintiff has failed to allege facts indicating that he is subject to a significant risk of serious injury without the cameras."). Moreover, Plaintiff alleges no harm from the lack of cameras in his cell. *Garey v. Langley*, No. 2:17-cv-00117 LPR-PSH, 2020 U.S. Dist. LEXIS 170474, at *17 (E.D. Ark. July 10, 2020) (dismissing claim based on lack of security cameras on initial review finding the plaintiff alleged no harm suffered as a result), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 167775 (E.D. Ark., Sept. 14, 2020). Therefore, this claim will also be dismissed for failure to state a claim.

### g. *Sprinkler system*

Turning to Plaintiff's allegation that the medical unit does not have a functioning sprinkler system, the Court finds that the allegation also fails to meet the objective component. *See, e.g.*, *Deas v. Ingham Cnty. Jail*, No. 1:18-cv-838, 2018 U.S. Dist. LEXIS 136744, at *9 (W.D. Mich. Aug. 14, 2018) (dismissing claim alleging lack of sprinklers on initial review finding "[t]he presence of sprinklers in the cells and common areas might enhance safety in the jail; however, the absence of sprinklers does not make the jail inherently dangerous"); *Lyle v. Montgomery County Jail & Jail Maint.*, No. 3:15-CV-0480, 2015 U.S. Dist. LEXIS 56018, at *6-7 (M.D. Tenn. Apr. 28, 2015) (dismissing claim based on lack of sprinklers and finding "their absence per se does not rise to the level of a constitutional violation"); *Mays v. Untig*, No. 08-CV-3379, 2010 U.S. Dist. LEXIS 6376, at *8 (D.N.J. Jan. 26, 2010) ("The absence of sprinklers or fire drills, so long as the facility is in compliance with local fire code, does not amount to a viable claim."). Therefore, Plaintiff's claim based on the lack of a sprinkler system in his cell will be dismissed for failure to state a claim.

### 2. ADA

Upon review, <u>the Court will allow Plaintiff's claims based on violation of the ADA to proceed against Grayson County based on Plaintiff's allegations of lack of accommodation for his disability in the medical unit's restroom.</u>

**3. Injunctive relief**

Plaintiff also seeks injunctive relief in the form of "immediately issue a Court order forbidding [GCDC] from housing federal prisoners on the floor" and "mandate one (1) hour of recreation daily." An inmate's release from prison or transfer to another prison moots his request for injunctive relief. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's § 1983 claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Because Plaintiff is no longer incarcerated at GCDC, his request for injunctive relief will be dismissed.

**IV.**

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's individual-capacity claims against Woosley, Odom, Hutch, Watch, and Skaggs; his claims against the City of Leitchfield; his Eighth Amendment claims; his Fourteenth Amendment conditions-of-confinement claims based on the lack of a panic button, recreation, cold temperatures, E-cigarettes, and lack of cameras and a sprinkler system; and his claim for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claims against Woosley, Odom, Hutch, Watch, and Skaggs are **DISMISSED** as redundant to his claims against Grayson County.

Because no claims remain against them, the Clerk of Court **is DIRECTED to terminate Defendants Woosley, Odom, Hutch, Watch, Skaggs, and City of Leitchfield** as parties to this action.

13

The Court will enter a separate Service and Scheduling Order to govern the development of the claims the Court has allowed to proceed against Grayson County – Plaintiff's Fourteenth Amendment claim related to overcrowding based on his allegations that he was forced to sleep on a mat on the floor for six months despite being in a wheelchair causing him injury and his ADA claim based on his allegations of lack of accommodation for his disability in the medical unit's restroom.  In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

With regard to his Fourteenth Amendment claim, Plaintiff may file a motion to amend the complaint to name any individuals whom he alleges were personally involved in housing him on the floor, sue them in their individual capacity, and state specific allegations against each individual.  However, Plaintiff is not permitted to name specific individuals in connection with his ADA claim because the Sixth Circuit has held that the ADA does not permit public employees to be sued in their individual capacities.  *See Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007).

Should Plaintiff choose to file a motion to amend, he must do so **no later than February 26, 2026**.  The Court will allow Plaintiff to file a motion to amend with regard to his Fourteenth Amendment overcrowding claim only and will not address motions to amend with respect to any of the dismissed claims.

The Clerk of Court is **DIRECTED** to place this case number and word "Second Amended" on a § 1983 complaint form and send it to Plaintiff, along with three summons forms and a motion form, should he choose to file a motion to amend the complaint.

Date:    January 29, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
       Grayson County Judge Executive
       Grayson County Attorney

4414.010

15